**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION - ST. CROIX**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| KIPPY GORDON ROBERSON, | ) |
| | ) Case No. 1:14-bk-10007-MFW |
| Debtor. | ) |
| | ) |
| _____ | ) |
| | ) |
| JOSEPH THOMAS and | ) |
| INGRID THOMAS-JACKSON, | ) |
| Individually and as Personal | ) |
| Representatives of the Estate of | ) |
| Gilbert Thomas, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No. 1:14-ap-1002-MFW |
| | ) |
| KIPPY GORDON ROBERSON, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

<u>**MEMORANDUM OPINION**</u>[1]

Before the Court is the Motion of Kippy Gordon Roberson (the
"Debtor") for Summary Judgment on the Complaint filed by Joseph
Thomas and Ingrid Thomas Jackson, individually and as Personal
Representatives of the Estate of Gilbert Thomas (the
"Plaintiffs").  The adversary proceeding arises from the 2008
shooting death of the Plaintiffs' son by the Debtor and the
settlement of the resulting civil action, pursuant to which the
Debtor agreed to pay the Plaintiffs $100,000 just prior to trial
in 2013.  The Plaintiffs now seek an exception to the Debtor's

---

[1]     This opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

chapter 7 discharge pursuant to section 523(a)(6) and (a)(2)(A)
of the Bankruptcy Code, contending that (1) the Debtor willfully
and maliciously shot and killed their son and (2) the Debtor made
false representations and entered into the settlement agreement
under false pretenses.  The Plaintiffs alternatively seek denial
of the Debtor's discharge pursuant to section 727(a)(2)(A),
(a)(4)(A), (a)(4)(D), and (a)(5) of the Bankruptcy Code, alleging
that the Debtor fraudulently filed for bankruptcy.  For the
reasons that follow, the Debtor's Motion for Summary Judgment
will be granted in part and denied in part.

I.    BACKGROUND

      A.    The Shooting

      In 2008, the Debtor was an Assistant Attorney General with
the Department of Justice for the Virgin Islands.  (Adv. D.I. 12,
19-1.)  As a criminal prosecutor, he was permitted to carry a
concealed handgun.  (Id.)

      On April 18, 2008, the Debtor was dining with friends at
Smuggler's Cove where the Plaintiffs' eighteen-year-old son,
Gilbert Thomas, was employed as a dishwasher.  (Id.)  That night,
however, Thomas was filling in at the pizza station and burned
several pizzas.  (Adv. D.I. 19-1, 19-4.)  One of the burnt pizzas
was delivered to the Debtor's table and returned to the kitchen.
(Adv. D.I. 12, 19-1.)

2

John Buckley, the owner of Smuggler's Cove, confronted Thomas about the burnt pizza and fired him early in the evening. (Adv. D.I. 12, 19-4.)  Buckley then left the restaurant to go to the grocery store.  (Id.)  Thomas did not have a car and waited at the restaurant for his mother to pick him up after work later that night.  (Adv. D.I. 1, 19-1.)

When Buckley returned, Thomas approached him to ask why he had been fired.  (Adv. D.I. 12, 19-4.)  Thomas allegedly became violent and attacked Buckley in the kitchen.  (Adv. D.I. 12, 19-1, 19-4.)  The cook, Kevin Sutcliffe, restrained Thomas in a bear-hug and Buckley left.  (Id.)  Thomas resisted Sutcliffe's restraint and the struggle moved from the kitchen to the dining area, where the Debtor was sitting.  (Adv. D.I. 12, 13, 19-1.)

The Debtor observed the altercation and sought to aid Sutcliffe, alleging that he saw a knife in Thomas' hand.  (Adv. D.I. 12, 13.)  The Debtor choked Thomas by placing his thumb and finger around Thomas' trachea until he dropped the knife.  (Id.)  Once the Debtor released him, Thomas allegedly ran toward the kitchen, grabbed meat cleavers or knives, and started walking toward the exit.  (Adv. D.I. 12, 13, 19-1.)

The Debtor drew his concealed handgun.  (Id.)  He alleges that he warned Thomas to drop his weapon or he would shoot but that Thomas kept walking forward.  (Adv. D.I. 13.)  When Thomas was within ten feet of the Debtor, the Debtor fired three 40-

3

caliber rounds into Thomas' torso. (Adv. D.I. 12.)  Thomas stumbled, but continued out the door toward the gate where his mother was waiting for him. (Adv. D.I. 12, 19-1.)  He collapsed and died outside Smuggler's Cove. (Id.)

B.    The Civil Action

On August 12, 2008, the Plaintiffs commenced a civil action against the Debtor in the District Court of the Virgin Islands seeking damages for, inter alia, the battery and wrongful death of their son.[2]  (Adv. D.I. 19-1.)

On December 17, 2013, three weeks before the scheduled trial, the Plaintiffs and the Debtor agreed to a mediated settlement. (Adv. D.I. 13, 19-1.)  The Settlement Agreement required the Debtor to pay the Plaintiffs $100,000; a $5,000 payment was due by January 17, 2014, and monthly payments of $625 were due thereafter pursuant to a garnishment agreement. (Adv. D.I. 1, 12, 13, 19-1.)  The Settlement Agreement contained an acceleration clause providing that the entire debt would become due if the Debtor defaulted. (Adv. D.I. 1.)

On December 18, 2013, the Plaintiffs sent the Debtor's attorney the Consent Judgment and Consent of Garnishment. (Adv. D.I. 19-1.)  On December 23, 2013, the Debtor filed the Consent Judgment with the District Court, which entered the Order and

---

[2]    No criminal charges related to the shooting were ever brought.

4

dismissed the case.  (Id.)  The Debtor did not, however, return the Consent of Garnishment or make any payments pursuant to the Settlement Agreement.  (Id.)

On February 3, 2014, the Plaintiffs filed a Motion to Enforce the Consent Judgment with the District Court.  (Adv. D.I. 19-1.)  Approximately one week later, the Debtor took a medical leave of absence from work.  (Adv. D.I. 13, 19-1.)  On April 11, 2014, the Debtor's psychologist advised the Plaintiffs of the Debtor's request for an additional four weeks of treatment, through May 10, 2014.  (Adv. D.I. 13.)  The Debtor was cleared to return to work on June 18, 2014.  (Id.)

On June 2, 2014, the Debtor filed a chapter 7 bankruptcy petition, identifying the Plaintiffs as unsecured creditors with a claim of $100,000.  (Adv. D.I. 12.)  The Plaintiffs contend that they did not learn of the Debtor's bankruptcy until August 1, 2014, forty-five minutes prior to the status conference on their Motion to Enforce.  (Adv. D.I. 19-1.)  In light of the bankruptcy case, the District Court stayed the Motion to Enforce. (Id.)

On August 28, 2014, the Plaintiffs commenced the instant adversary proceeding seeking to except the $100,000 debt from the Debtor's discharge or, in the alternative, to deny the Debtor's discharge.  (Adv. D.I. 1.)

5

On October 2, 2014, the Debtor filed an Answer to the Complaint, raising several affirmative defenses.  (Adv. D.I. 4.) On October 11, 2016, the Debtor filed the Motion for Summary Judgment.  (Adv. D.I. 12.)  The Plaintiffs opposed the Motion, contending that genuine issues of material fact preclude summary judgment.  (Adv. D.I. 18.)  The matter has been fully briefed and is now ripe for decision.

## II.    JURISDICTION

The Court has jurisdiction over this adversary proceeding which involves a determination of dischargeability of a debt and the Debtor's entitlement to discharge.  28 U.S.C. §§ 1334 & 157(b)(1), (b)(2)(I), & (b)(2)(J).  The claims "stem[] from the bankruptcy itself" and may constitutionally be decided by a final order of the bankruptcy court.  Stern v. Marshall, 564 U.S. 462, 499 (2011) ("[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.").

## III.    DISCUSSION

### A.    Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when the movant shows that there is no genuine issue as to any material fact and is entitled

6

to judgment as a matter of law.  FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056.  See also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material when it could "affect the outcome of the suit."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Admissions in pleadings, affidavits, and discovery and disclosure materials on file (and all factual inferences therefrom) must be viewed in the light most favorable to the non-moving party.  Id. The Court need not weigh the evidence and determine the truth at the summary judgment stage; rather, it must decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party.  See, e.g., Williams v. United Corp., No. 2007-118, 2008 WL 2714211, at *3 (V.I. July 10, 2008) (citing Anderson, 477 U.S. at 255).

Once the movant demonstrates that there is no genuine dispute of material fact, the burden of proof shifts to the party opposing summary judgment to establish a triable issue of fact. See, e.g., Miller v. JNJ Logistics, LLC (In re Proliance Int'l, Inc.), 514 B.R. 426, 429 (Bankr. D. Del. 2014).

   B.   Exceptions to Discharge

The grant of a discharge in bankruptcy is liberally construed in favor of the debtor while exceptions to discharge are strictly construed against creditors.  Webber v. Giarratano

(In re Giarratano), 299 B.R. 328, 334 (Bankr. D. Del. 2003)
(citing In re Cohn, 54 F.3d 1108 (3d Cir. 1995)).  The objecting
creditor bears the burden of proof under section 523 of the
Bankruptcy Code and must establish the elements of
nondischargeability by a preponderance of the evidence.  Grogan
v. Garner, 498 U.S. 279, 286 (1991).

In cases where, as here, the non-moving party bears the
burden of proof on the applicable substantive law, the party
moving for summary judgment may either produce affirmative
evidence negating a material fact or show the absence of evidence
in the record to support a judgment for the non-moving party.
Celotex, 477 U.S. at 330.

1.   Section 523(a)(6)

The Plaintiffs assert that the debt owed pursuant to the
Settlement Agreement is not dischargeable because the Debtor
engaged in willful and malicious conduct when he intentionally
shot and killed Gilbert Thomas.  The Plaintiffs contend that the
three gunshots to Thomas' torso (as opposed to his foot)
demonstrate the Debtor's intent to kill.  They also argue that
the killing was malicious because it was not justified.

The Debtor responds that the Plaintiffs have not presented
any evidence that the Debtor acted with malice and that, in fact,
he killed Thomas in self-defense.

The Plaintiffs argue, however, that the Debtor waived the self-defense argument by failing to raise it as an affirmative defense in his Answer.  See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (a defendant is generally required to assert affirmative defenses in his answer "to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." (citing cases)).  Even if he had properly raised it, however, the Plaintiffs contend the Debtor cannot prove self-defense as a matter of law under section 523(a)(6).

Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity. . . ."  11 U.S.C. § 523(a)(6).  "Liabilities arising from assault or assault and battery are generally considered as founded upon a willful and malicious injury and are therefore within the exception."  In re Granoff, 250 F. App'x 494, 495 (3d Cir. 2007) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.12[4]).

A debtor's actions are willful under section 523(a)(6) "if they either have a purpose of producing injury or have a substantial certainty of producing injury."  In re Conte, 33 F.3d 303, 305 (3d Cir. 1994).  Cf. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (holding that section 523(a)(6) requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury).

9

Malice contemplates an injury that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." In re Rezyskowski, 493 B.R. 713, 722 (Bankr. E.D. Pa. 2013) (quoting In re Jacobs, 381 B.R. 128, 138-39 (Bankr. E.D. Pa. 2008)). No showing of specific malice is required. Conte, 33 F.3d at 308.

Self-defense is, however, an affirmative defense that negates a claim of malice under section 523(a)(6). See In re Soliman, 539 B.R. 692, 700 (Bankr. S.D.N.Y. 2015). The debtor bears the burden of proving the elements of any affirmative defenses. Id. (citing Kleman v. Taylor (In re Taylor), 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004)).

The Court disagrees with the Plaintiffs that the Debtor waived the affirmative defense of self-defense. Rule 8(c) of the Federal Rules of Civil Procedure, applicable pursuant to Rule 7008 Federal Rules of Bankruptcy Procedure, does not require that self-defense be affirmatively pled. See, e.g., McKenzie v. City of Detroit, 74 F. App'x 553, 557 (6th Cir. 2003) (finding a compelling lack of authority requiring self-defense to be pled as an affirmative defense). Further, the Court finds that whether the Debtor acted in self-defense is a question of fact. See Gov't of V.I. v. Robinson, 29 F.3d 878, 882 (3d Cir. 1994) (self-defense is a question for the jury). Because a finding that the Debtor acted in self-defense would negate the malice requirement

10

under section 523(a)(6), it is a material fact.

Accordingly, the Court concludes that the Debtor is not entitled to judgment as a matter of law, and the Court will deny the Debtor's Motion for Summary Judgment with respect to the section 523(a)(6) claim.

    2.   <u>Section 523(a)(2)(A)</u>

The Plaintiffs also seek to except their debt from the Debtor's discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code, contending that the Debtor made false representations and entered into the Settlement Agreement under false pretenses and that the bankruptcy was fraudulently filed to avoid payment of the debt.  The Plaintiffs allege that they agreed to the $100,000 settlement (and forfeited their opportunity for a trial on their tort claims) based on the Debtor's representation that he would not file bankruptcy.  They contend that the Debtor did not intend to abide by the Settlement Agreement, was not going to allow his salary to be garnished, and knew he was going to file bankruptcy to avoid paying the Plaintiffs.  <u>See</u> <u>Archer v. Warner</u>, 538 U.S. 314, 319 (2003) (a debt for money promised in a settlement agreement accompanied by the release of underlying tort claims can amount to a debt for money obtained by fraud within the nondischargeability statute's terms).  The Plaintiffs argue that the Debtor's fraudulent intent can be inferred from his refusal to pay anything under the

Settlement Agreement and from his subsequent bankruptcy filing. They also contend (in their opposition to summary judgment)[3] that the Debtor's gratuitous partial transfer of equity in his residence to his second wife in December 2009 and his intentional undervaluation of his residence in his bankruptcy schedules demonstrate a fraudulent conveyance scheme constituting actual fraud. Husky, 136 S. Ct. at 1586 ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.").

The Debtor contends that his bankruptcy filing alone does not establish fraudulent intent. See In re Leitzke, Adv. No. 14-50017, 2014 WL 3583706, at *3 (Bankr. D. Del. July 18, 2014) ("A promise not to seek to discharge a debt in bankruptcy is insufficient to establish a claim for nondischargeability of that debt under section 523(a)(2)(A)."). The Debtor argues further that the Plaintiffs have failed to present any other facts showing that the Debtor intended not to fulfill the terms of the

_____

[3]     The Plaintiffs allege actual fraud under section 727(a) in the Complaint, but premise their opposition to the summary judgment motion on allegations of actual fraud under section 523(a)(2)(A). The Plaintiffs rely on similar factual allegations for both claims, notwithstanding the very different remedies. See Husky Intern. Elecs., Inc. v. Ritz, 136 S. Ct. 1581, 1589 (2016) ("Although [sections 523(a)(2)(A) and 727(a)(2)] could cover some of the same conduct, they are meaningfully different."). The Court addresses the section 727(a) claims in Part C infra.

Settlement Agreement at the time he agreed to it.  In re
Shreffler, 319 B.R. 113, 121 (Bankr. W.D. Pa. 2004) ("[T]he mere
filing of bankruptcy following entry into a . . . settlement
agreement does not per se establish an intent to deceive.").  See
also In re Singh, 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010) ("It
is well established that a 'broken promise to repay a debt,
without more, will not sustain a cause of action under §
523(a)(2)(A).'" (quoting In re Harrison, 301 B.R. 849, 854
(Bankr. N.D. Ohio 2003)).

The Debtor did not file a Reply to the Plaintiffs'
opposition to summary judgment and therefore did not address the
Plaintiffs' section 523(a)(2)(A) claims for actual fraud.  He
contends in his Motion for Summary Judgment, however, that he was
forthright and honest with the chapter 7 trustee, the United
States Trustee, and the Court in all respects.

Section 523(a)(2)(A) excepts from discharge any debt
obtained by "false pretenses, a false representation, or actual
fraud, other than a statement respecting the debtor's or an
insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

### a.   False Representations and False Pretenses

"False pretenses involve implied misrepresentations or
conduct creating and fostering a false impression.  False
representations, on the other hand, involve express
misrepresentations."  In re Hendry, 428 B.R. 68, 79-80 (Bankr. D.

13

Del. 2010) (citing <u>Krenowsky v. Haining (In re Haining)</u>, 119 B.R. 460, 463-64 (Bankr. D. Del. 1990)).  To establish a nondischargeability claim for false pretenses or false representation under section 523(a)(2)(A), a creditor must demonstrate by a preponderance of the evidence that:

> (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the debtor's false representations; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

<u>In re Bocchino</u>, 794 F.3d 376, 380 (3d Cir. 2015) (quoting <u>In re Cohen</u>, 191 B.R. 599 (D.N.J. 1996)).  "The false pretense or misrepresentation must be both material and made with the intent to deceive" at the time of the transaction.  <u>In re Adalian</u>, 474 B.R. 150, 160 (Bankr. M.D. Pa. 2012).  <u>See</u> <u>In re Yotis</u>, 521 B.R. 625, 635 (Bankr. N.D. Ill. 2014) ("[F]ailure to honor one's promise is (just) a breach of contract, but making a promise that one <u>intends</u> not to keep is fraud." (quoting <u>U.S. ex rel. Main v. Oakland City Univ.</u>, 426 F.3d 914, 917 (7th Cir. 2005)) (emphasis in original).  An intent to deceive can be inferred from the totality of the circumstances.  <u>Cohn</u>, 54 F.3d at 1118-19.

The Court finds that there are genuine issues of material fact precluding summary judgment for the Debtor on the Plaintiffs' claims for false representations and false pretenses.

14

The Court cannot determine from the record whether the Debtor intended not to fulfill the terms of the Settlement Agreement at the time he agreed to it without first assessing his credibility and demeanor.  See, e.g., Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249 (4th Cir. 1987) ("[A] determination concerning fraudulent intent depends largely on an assessment of the credibility and demeanor of the debtor. . . .").  See also Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict.").  There are, therefore, genuine issues of material fact for trial as to (1) whether the Debtor fraudulently made material misrepresentations to the Plaintiffs (i.e., with knowledge of falsity or gross recklessness as to truth) at the time of the Settlement Agreement and (2) whether the Debtor entered into the Settlement Agreement with the intent to deceive the Plaintiffs.  See McDonald v. Dunnett (In re Dunnett), Adv. No. 11-80038, 2013 WL 2352244, at *11 (Bankr. N.D.N.Y. May 29, 2013) ("Whether a debtor acted with the requisite knowledge [or recklessness] and intent to deceive at the time the debt was created are closely related issues of fact." (citing Nat'l Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 301-02 (2d Cir. 1996)).

15

Accordingly, the Court will deny the Debtor's Motion for
Summary Judgment on the Plaintiffs' claims for false
representations and false pretenses pursuant to section
523(a)(2)(A).

            b.    Actual Fraud

Actual fraud contemplates common law fraud.  "The word
'actual' has a simple meaning in the context of common-law fraud:
It denotes any fraud that 'involv[es] moral turpitude or
intentional wrong.'"  Husky, 136 S. Ct. at 1586 (quoting Neal v.
Clark, 95 U.S. 704, 709 (1878)).  "'[F]raud' connotes deception
or trickery generally, [but] is difficult to define more
precisely."  Id.  The key element of any actual fraud claim under
section 523(a)(2)(A) is the scienter element (i.e., wrongful
intent).  4-523 COLLIER ON BANKRUPTCY ¶ 523.08.

The Supreme Court has held that actual fraud under section
523(a)(2)(A) can encompass a transfer scheme designed to hinder
the collection of a debt, even without a false representation or
fraud in the incurrence of the debt.  Husky, 136 S. Ct. at 1587
("The fraudulent conduct is not in dishonesty in inducing a
creditor to extend a debt [but] . . . is in the acts of
concealment and hindrance.").

The Court finds that there is a question of material fact as
to whether the Debtor engaged in actual fraud within the meaning
of section 523(a)(2)(A) because the scienter element requires a

credibility determination.

The Plaintiffs' argument that their debt is not dischargeable is premised on the Debtor's alleged fraudulent transfer of half his equity in his residence to his second wife for $10 in December 2009, approximately one year after the commencement of the civil action and more than four years prior to the parties' agreement to settle the civil action.  The Plaintiffs contend that the Debtor transferred that asset to avoid payment of their debt.

The Court concludes that the proximity of the alleged transfer to the date of the civil complaint (notwithstanding evidence in the record that the Debtor had been recently remarried) raises a material issue of fact as to the Debtor's intent to deceive and precludes summary judgment for the Debtor. (Adv. D.I. 19-1 at ¶ 91.)

The Plaintiffs also argue that the Debtor's alleged $110,000 undervaluation of his residence in his bankruptcy schedules (filed approximately six months after the Settlement Agreement) is a fraudulent concealment of assets.  The Plaintiffs are dissatisfied with the Debtor's explanation that the real property lost significant value over the four-year period because the nearby oil refinery closed.  (Adv. D.I. 19-2.)

The Court finds that there is a question of fact as to whether the Debtor possessed the intent to deceive the Plaintiffs

17

when he valued his residence (on which there was a $372,826.96 mortgage) at $390,000 in light of the alleged $500,000 valuation in 2010.   (D.I. 1.)   The Court, therefore, concludes that the Debtor is not entitled to judgment as a matter of law on the actual fraud claims under section 523(a)(2)(A) and will deny the Motion accordingly.

        C.   <u>Denial of Discharge</u>

        In support of their section 727(a) claims, the Plaintiffs allege generally that the Debtor: (1) <u>may have</u> transferred assets in violation of section 727(a)(2)(A); (2) <u>may have</u> made a false oath or account in his bankruptcy schedules in violation of section 727(a)(4)(A); (3) <u>may have</u> failed to account for assets in violation of section 727(a)(5); and (4) <u>may have</u> concealed assets and therefore withheld relevant information from the chapter 7 trustee relating to his property and financial affairs, in violation of section 727(a)(4)(D).

        The Debtor responds only to the section 727(a)(4)(D) claim (which is the only section 727(a) claim in the Plaintiffs' prayer for relief) and argues that there is no evidence of nondisclosure or concealment in the record.   In support of his Motion for Summary Judgment, the Debtor cites the August 21, 2014, report from the United States Trustee stating that the Debtor's chapter 7 filing was not presumptively abusive.   (Adv. D.I. 12; D.I. 24.)

        The Debtor's reliance on the August 21, 2014, report is

18

misplaced.  The lack of a presumption of abuse on which the
report is based relates to whether the Debtor has the ability to
fund a chapter 13 repayment plan (and therefore is ineligible to
file a chapter 7 petition).  <u>See</u> 11 U.S.C. § 707(b)(1).  <u>See also</u>
<u>In re Paret</u>, 347 B.R. 12, 13 (Bankr. D. Del. 2006).  Even where
no presumption of abuse arises, as here, the chapter 7 petition
may still be dismissed as a result of fraud.  <u>Paret</u>, 347 B.R. at
14.  The report is, therefore, irrelevant to the issues before
the Court.

Denial of discharge pursuant to section 727 is an extreme
remedy and should not be taken lightly.  <u>Rosen v. Bezner</u>, 996
F.2d 1527, 1531 (3d Cir. 1993).  The reasons to deny a discharge
"must be real and substantial, not merely technical and
conjectural."  <u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 786 (1st Cir.
1997) (quoting <u>Boroff v. Tully (In re Tully)</u>, 818 F.2d 106, 110
(1st Cir. 1987)).  The party objecting to discharge bears the
burden of proof on all elements of the objection by a
preponderance of the evidence.  FED. R. BANKR. P. 4005.  <u>See</u>
<u>Grogan</u>, 498 U.S. at 285-91.  A debtor may defeat the objection on
a motion for summary judgment by producing affirmative evidence
negating a material fact or citing the absence of evidence to
support a judgment in favor of the objecting creditor.  <u>See</u>
<u>Celotex</u>, 477 U.S. at 330.  If the objecting creditor cannot
"muster sufficient evidence to make out its claim," the debtor is

19

entitled to summary judgment as a matter of law.  Id. (citing

Anderson, 477 U.S. at 249).

    1.  Section 727(a)(2)(A)

    The Plaintiffs contend that the Debtor's gratuitous transfer

of half his equity in his residence to his second wife in

December 2009 is a basis to deny his discharge under section

727(a)(2)(A).

    According to the Third Circuit, a section 727(a)(2)(A) claim

has two components:

> [A]n act (i.e., a transfer or a concealment of
> property) and an improper intent (i.e., a subjective
> intent to hinder, delay, or defraud a creditor).  The
> party seeking to bar discharge must prove that both of
> these components were present during the one year
> period before bankruptcy; anything occurring before
> that one year period is forgiven.

Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) (emphasis

added).

    The Plaintiffs' argument fails as a matter of law because

they allege that the transfer occurred in December 2009, more

than four years before the Debtor filed his bankruptcy petition.

The Plaintiffs do not identify any other concealed assets or

transfers within the relevant one-year prepetition period.  There

is, therefore, no evidence in the record to support a judgment

for the Plaintiffs on the section 727(a)(2)(A) claim.

    Accordingly, the Court will grant summary judgment in favor

of the Debtor on the Plaintiffs' objection to the Debtor's

discharge pursuant to section 727(a)(2)(A).

2.   Section 727(a)(4)(A)

The Plaintiffs also argue that the Debtor purposely undervalued his residence in connection with his bankruptcy filing as part of a scheme to avoid paying their debt.  They contend that such undervaluation constitutes a false oath or account warranting denial of discharge under section 727(a)(4)(A).

A debtor may be denied a discharge under section 727(a)(4)(A) if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  To be successful, the plaintiff must demonstrate that: "(1) the debtor made a false statement under oath; (2) the debtor knew the statement was false; (3) the debtor made the statement with the intent to deceive; and (4) the statement was material to the bankruptcy case."  Singh, 433 B.R. at 154.  The undervaluation of assets on a debtor's bankruptcy schedules may be a basis to deny discharge under section 727(a)(4)(A).  See Robinson v. Worley, 849 F.3d 577, 587 (4th Cir. 2017).

The Court has already identified a question of fact as to whether the Debtor acted with fraudulent intent in downplaying the value of his residence in his bankruptcy schedules.  A debtor's intentional undervaluation of an asset in sworn

21

schedules can constitute a material false oath because it signals to the chapter 7 trustee that there is no reason to conduct further investigation into the property and prevents efficient administration of the estate.  <u>Worley</u>, 849 F.3d at 587.  This material issue of fact regarding the Debtor's intent therefore precludes summary judgment on the section 727(a)(4)(A) claim.

Accordingly, the Court will deny the Motion for Summary Judgment as to the Plaintiffs' section 727(a)(4)(A) claim.

### 3.  Section 727(a)(5)

The Plaintiffs additionally argue that there is an intentional and unexplained loss of value in the Debtor's residence, comparing the allegedly arbitrary value in the Debtor's 2014 bankruptcy schedules with a valuation done in 2010.

Section 727(a)(5) permits the denial of discharge if the debtor fails to explain any loss of assets or deficiency of assets to meet the debtor's liabilities.  11 U.S.C. § 727(a)(5). "The objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets."  <u>Spitko</u>, 357 B.R. at 318-19 (quoting <u>In re Ishkhanian</u>, 210 B.R. 944, 953 (Bankr. E.D. Pa. 1997)).  Once the objector has met its burden of making a prima facie case, the burden shifts to the debtor to make a satisfactory explanation.  <u>Id.</u> at 318 (citing <u>In re Chalik</u>, 748 F.2d 616, 619 (11th Cir. 1984)).

The Court finds that there is no evidence in the record that an actual loss occurred (requiring an explanation from the Debtor).  The $390,000 valuation (as opposed to the $500,000 valuation) does not mean that there was a "loss" of a tangible asset; it is a decrease in value.  See, e.g., In re Poland, 222 B.R. 374, 382 (Bankr. M.D. Fla. 1998) (explaining that an asset still has value to the bankruptcy estate and is not lost, even if the Debtor misstates the asset's value).

Accordingly, the Court will grant summary judgment in favor of the Debtor on the Plaintiffs' objection to discharge under section 727(a)(5).

### 3.   Section 727(a)(4)(D)

The Plaintiffs argue further that the Debtor's concealment of assets in his bankruptcy petition is tantamount to the withholding of relevant information relating to the Debtor's property and financial affairs in violation of section 727(a)(4)(D).

Section 727(a)(4)(D) provides that the Court shall grant a debtor's discharge unless the debtor, knowingly and fraudulently, or in connection with the case, withheld from an officer of the estate any recorded information (including books, documents, records, and papers) relating to the debtor's property or financial affairs.  11 U.S.C. § 727(a)(4)(D).

The Plaintiffs do not identify any recorded information that

23

the Debtor failed to disclose in his bankruptcy petition or to provide the chapter 7 trustee. Rather, the Plaintiffs contend only that the Debtor, as part of a fraudulent scheme, <u>may have</u> withheld information relating to his property and financial affairs. The Plaintiffs, therefore, do not raise an issue of material fact sufficient to withstand a motion for summary judgment. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for the jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 250 (citing <u>First Nat'l Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968)).

Accordingly, the Court will grant the Debtor's Motion for Summary Judgment on the Plaintiffs' objection to discharge pursuant to section 727(a)(4)(D).


IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Motion for Summary Judgment will be granted in part and denied in part.

An appropriate Order follows.


Dated:  May 15, 2017          BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge

24